CANUTE R. MATSON, for use, etc.

*v.*

WILLIAM RIPLEY *et al.*

*Opinion filed April 16, 1902.*

1. EVIDENCE—*when a bill of sale is improperly admitted in evidence.* In a suit on a replevin bond given in an action of replevin for certain lumber, a bill of sale for a certain lot of pine and cedar logs sold to the defendant, bearing an endorsement purporting to be a memorandum of the filing of the bill by the endorser, as town clerk, is improperly admitted in evidence where there is no proof that the lumber was cut from the logs described in the bill of sale, or that the seller resided in the township where the bill purported to have been filed, or that the party making the endorsement was the town clerk, or assumed to act as such.

2. SALES—*a purchaser in possession of personal property is protected against subsequent sale.* If, as between the parties to a bill of sale, the purchaser has a valid claim on the property, the delivery of the property to him by the seller precludes the latter from conveying a valid title thereto to a creditor of his who attaches the property after its delivery to the purchaser in the bill of sale.

*Matson* v. *Ripley*, 98 Ill. App. 479, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

HOYNE, O'CONNOR & HOYNE, for appellant.

M. B. & F. S. LOOMIS, for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

William Ripley and Bradford W. Ripley, two of the appellees, brought a suit in replevin in the circuit court of Cook county against the partners composing the firm of Kellogg, Ducey & McAuley, and William W. Oliver, for one hundred thousand feet of pine lumber on board the vessel *William H. Dunham*, lying in port in the Chicago river, and executed a replevin bond in the sum of $2400, with the appellee John C. Durgin as surety, to the appellant, Canute R. Matson, sheriff of said county. The property was taken under the writ of replevin, and the suit, on motion of plaintiffs, was dismissed at their costs and a return of the property was awarded. This suit was brought on the replevin bond by appellant for the use of Kellogg, Ducey & McAuley and William W. Oliver, and appellees pleaded that the merits were not determined in the replevin suit, and that the appellees William Ripley and Bradford W. Ripley, constituting the firm of Ripley & Son, were the absolute owners of the goods. A jury was waived and the issues submitted to the court, which found them for the appellant. The attorney's fees on behalf of the defendants in the replevin suit were proved to be $50, and the court assessed appellant's damages at $51, not including anything for the value of the lumber. Judgment was entered for the debt, $2400, and damages, $51, the debt to be discharged on payment of damages. The Appellate Court affirmed the judgment.

The facts proved were these: The defendants, Ripley & Son, were lumber dealers in Chicago. Hibbard & Co. operated a saw-mill at Masonville, Michigan. In 1889 Ripley & Son advanced $18,000 or more to Hibbard & Co. under an arrangement by which they were to receive the

output of the mill to reimburse them. Ripley & Son paid the expenses of rafting and of operating the mill, and received the lumber at the mill and shipped it to Chicago, paying freight charges, insurance and other expenses. They credited Hibbard & Co. on their advances with whatever the lumber was worth in Chicago. During that summer they had control of the schooner *William H. Dunham*, and it was engaged in their employ nearly all of the summer of 1889 bringing the lumber from the mill to Chicago. On October 8, 1889, Ripley & Son sent the schooner to Masonville for a load of the lumber. It arrived at the mill and began loading October 10 with the aid of a scow, which the captain procured at the expense of Ripley & Son and which took the lumber from the dock to the schooner. On October 11 part of the lumber was on board the schooner and part in the scow, when a replevin writ for the lumber, sued out by Richard Mason against Hibbard & Co., was served. He claimed that the logs from which the lumber was made had been cut by McArthur & McLellan from lands of the Mason estate, and his claim was for stumpage. Hibbard & Co. settled Mason's claim by paying him $500, when the lumber was released by the sheriff. On October 14, 1889, the schooner was nearly loaded and some lumber was still in the scow, when William W. Oliver sued out a writ of attachment against Hibbard & Co., and a deputy sheriff took possession under the attachment writ. All the lumber levied on was in the possession of Ripley & Son, delivered to them by Hibbard & Co. under the arrangement. Hibbard & Co. settled the attachment suit by giving Oliver a bill of sale of the lumber, the consideration stated being $900. The captain of the schooner gave Oliver a receipt for the lumber, to be delivered to Kellogg, Ducey & McAuley, at Chicago. It seems that Kellogg, Ducey & McAuley had a claim against Hibbard & Co. which was assigned to Oliver. There was evidence that Hibbard & Co. told Oliver and Mr. Kellogg, representing Kellogg, Ducey &

McAuley, that the lumber belonged to Ripley & Son, but this was denied by Oliver. The vessel returned to Chicago with the lumber and the lumber was taken by virtue of the writ of replevin.

The first complaint is, that the trial court erred in admitting in evidence, over the objection of plaintiff, two bills of sale and the endorsements thereon. These bills of sale were made in the spring of 1889 by Hibbard & Co., and purported to convey to Ripley & Son a large amount of pine and cedar logs, cedar posts and cedar ties lying in the Tacossh, Rapid and Whitefish rivers, and marked on the end with the letter "H." The endorsements purported to be memoranda of the filing of the bills of sale by P. G. Wright and Percival Cadby, respectively, as town clerk of Masonville, Michigan. The purpose of the memoranda was to show the filing of the bills of sale, which were intended as mortgages, in compliance with the laws of Michigan. There was no evidence that the parties making the endorsements were town clerks of Masonville, or that either of them held or assumed to hold the office of town clerk or acted as such, or that Hibbard & Co. lived in the township in which the bills purported to be filed. There was no evidence that the lumber in question was sawed from the logs described in the bill of sale, but the evidence was to the contrary. The bills of sale were dated March 11 and April 18, 1889, and described logs, posts and ties marked on the end with the letter "H," while the evidence was that this lumber was sawed from logs with a different mark, bought from McArthur & McLellan. The bills of sale and endorsements were not evidence of title to the lumber in Ripley & Son or of a lien thereon, and it was error to admit them in evidence.

We are satisfied that the error should not have the effect to reverse the judgment. There was no evidence tending in any manner to impeach the entire good faith of the transaction on the part of Ripley & Son or to contradict the evidence showing them to be entitled to the

lumber. They had advanced a large sum of money to Hibbard & Co. and had paid the running expenses of the mill. They sent the schooner for the lumber, as they had been doing during the summer, and it had been delivered to them. As between the parties to the agreement, Ripley & Son had a valid claim on the lumber and could have recovered it from Hibbard & Co., and assuming that, while the lumber remained in the possession of Hibbard & Co., a purchaser in good faith from them would have acquired a good title and cut off the rights of Ripley & Son, he could not acquire such a title after the delivery of the lumber. The law will not permit the owner of personal property to create an interest in another and still continue in possession as the visible owner except by an instrument duly recorded. But that rule does not affect the rights of these parties. The Michigan statute offered in evidence applies only to a conveyance intended to act as a mortgage, not followed by an actual *bona fide* possession of the things mortgaged. It is beyond question that in this case there had been such actual *bona fide* change of possession. When the writ of attachment was issued Hibbard & Co. were not in possession, had no power to convey and no title remained in them liable to attachment. Oliver gained no right by his levy and acquired no title by the bills of sale of Hibbard & Co. or the receipt of the captain of the schooner.

The court refused the third proposition submitted as the law by the plaintiff. It stated a correct rule of law as applied to the bills of sale, but if it had been held to be the law it would not authorize a finding for the plaintiff. It related only to the effect to be given to the bills of sale in determining the title to the property. The error in refusing it was not prejudicial to the plaintiff.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*